IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **METRO TREATMENT OF MAINE, LP d/b/a PENOBSCOT COUNTY METRO TREATMENT CENTER,**<br><br>    Plaintiff,<br><br>  v.<br><br>**CITY OF BANGOR,**<br><br>    Defendant. | Civil Action No. _____ |

**COMPLAINT**
**INJUNCTIVE RELIEF SOUGHT**

NOW COMES the Plaintiff, Metro Treatment of Maine, LP d/b/a Penobscot County Metro Treatment Center ("Penobscot Metro"), and complains against the Defendant City of Bangor as follows:

**INTRODUCTION**

1. Penobscot Metro operates a methadone treatment clinic in Bangor. Because there are more recovering drug addicts in the area seeking methadone treatment than the 300 Penobscot Metro now serves, Penobscot Metro expanded its facility so that it now has the capacity to help an additional 200 people battle opiate addiction, a life-threatening disease. Although Penobscot Metro has obtained the state licenses it needs to expand and meets the requirements of federal law, the City has denied it permission to expand, under an ordinance that illegally singles out methadone clinics for special discriminatory treatment. Because recovering drug addicts are "qualified individual[s] with a disability" within the meaning of the Americans with Disabilities Act ("ADA"), and the Act bars the City from discriminating against such individuals, the City's denial of permission for Penobscot Metro to expand violates the ADA,

1

10872470.1

and is therefore unlawful. Penobscot Metro files this action to force the City to let it expand its methadone clinic so that recovering drug addicts who cannot now obtain methadone treatment may have the opportunity to do so.

## PARTIES

2. Metro Treatment of Maine, LP d/b/a Penobscot County Metro Treatment Center ("Penobscot Metro") is a limited partnership that operates a methadone treatment clinic in Bangor, Maine.

3. The City of Bangor is a Maine municipality. It receives some of its funding from the United States government.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) because the Plaintiff's claims arise under the Constitution and laws of the United States.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant is located in this district and the events giving rise to this claim occurred here.

## FACTUAL BACKGROUND

### *Methadone*

6. Methadone is a synthetic narcotic that helps people who are experiencing opiate withdrawal symptoms. It is recognized as an effective treatment for recovering opiate addicts. Methadone clinics provide treatment to patients recovering from addiction to legal prescription opiates, such as oxycodone (OxyContin and Percocet), hydrocodone (Vicodin), or hydromorphone (Dilaudid), and illegal drugs, such as heroin and fentanyl.

7. Treatment for recovering addicts at methadone clinics includes behavioral therapy or counseling and the administration of methadone.

8. Methadone is provided in controlled doses under strict medical supervision. In the early stages of treatment, oral doses of methadone are given by a nurse directly to each patient. Over time, patients who meet a stringent set of requirements designed to ensure that their treatment remains on track may be given take-home doses.

9. Methadone clinics must obtain two types of licensure from the State of Maine: a license from the Division of Licensing and Regulatory Services of the Department of Health and Human Services, and a license from the Pharmacy Board.

10. Under federal law, methadone clinics are regulated by the Drug Enforcement Agency and must follow guidelines and rules of the Substance Abuse and Mental Health Services Authority.

11. Methadone has been proven to be effective in helping people recover from drug addiction.

### *Penobscot Metro's Planned Expansion*

12. Penobscot Metro is licensed by the State of Maine to provide methadone treatment to 300 patients. As of August 1, 2016, Penobscot Metro had a waitlist of over 170 additional people who wish to receive methadone treatment.

13. Penobscot Metro gets daily calls from individuals expressing a desire for treatment and inquiring whether they can be served.

14. Because there are more people seeking methadone treatment in the Bangor area than available methadone-clinic spaces to serve them, Penobscot Metro decided to expand its facility so that it could serve more recovering drug addicts.

10872470.1

15. In March 2016 Penobscot Metro completed construction of upgrades and improvements needed to accommodate 200 additional patients, for a total of 500. That same month the City of Bangor Code Enforcement Office issued Certificates of Occupancy documenting that Penobscot Metro had met applicable building code requirements.

16. Penobscot Metro has obtained all state certifications and licenses it needs to operate a clinic that can serve 500 patients, and has met the requirements of federal law. All that remains is for the City to sign off on the expansion.

*The City's Ordinance*

17. In June 2016 Penobscot Metro applied to the Bangor City Council for approval of the expansion of its methadone clinic under Chapter 93 of the Bangor Code of Ordinances.

18. Chapter 93 bars the establishment of "chemical dependency treatment facilities…that provide methadone maintenance treatment" in the City of Bangor. *See* Chapter 93-1 ("No chemical dependency treatment facilities, as defined in § 165-13 of the Code, that provide methadone maintenance treatment, shall be approved, permitted, or receive a certificate of occupancy within the City of Bangor other than those currently located within the City of Bangor.").

19. Chapter 93 also bars existing facilities from expanding. *See* Chapter 93-2 ("Chemical dependency treatment facilities that provide methadone maintenance treatment and that currently have a certificate of occupancy to operate within the City of Bangor shall be prohibited from accepting patients in excess of the number for which each facility is currently licensed by state and federal agencies.").

20. Chapter 93 does permit existing facilities to "apply to the City for a license to increase the number of patients that it may treat at its existing facility" (Chapter 93-3), but that license may be issued only if five conditions are met:

> A. The property is adequate to accommodate the proposed increase, including providing sufficient interior space to avoid patient queuing on sidewalks, parking area, and other areas outside of the facility;
>
> B. The treatment program is able to hire and retain adequate numbers of qualified staff to meet applicable state and federal standards of care;
>
> C. The applicant has demonstrated a need for increased services that cannot be reasonably met except by the increase in the permitted number of patients at its existing location;
>
> D. The applicant is in compliance with all state or federal laws, rules or regulations regarding its opioid treatment program; and
>
> E. The applicant is in compliance will [sic] all City codes and ordinances.

Chapter 93-5.

21. At hearings held on August 1 and 8, 2016, Penobscot Metro demonstrated to the City Council that each of the section 93-5 conditions had been met.

22. Chapter 93-6 further provides that "the City Council may consider the geographic locations of patients and potential patients and may deny the application if it determines that there is sufficient patient demand to warrant a treatment facility in an area geographically closer to current and potential future patients." No such determination was made.

### *Discriminatory Prejudice*

23. While Penobscot Metro's application for permission to expand under Chapter 93 was pending, the City Council received emails from Bangor residents that demonstrated discriminatory prejudice against recovering drug addicts based on the false premise and

5

stereotype that methadone clinic patients are criminals who disrupt communities where methadone clinics are located.

24. One Bangor resident asked in an email: "Why would you want to flood our city with more addicts and the attendant problems that come with them?" He added: "Do we not have enough social problems in this city without importing more?"

25. A second Bangor resident argued against the expansion of Penobscot Metro's clinic because "[w]e were victims of theft and break in last September due to drug abuse by the criminal who invaded our home."

26. A third Bangor resident wrote about "the increased drug activity and crime, much of which is related to the reality that with more drug treatment, more drug addicts are drawn to our city. Many of them camp here, stay in shelters, or find cheap housing. Some break into an increasing number of abandoned or empty houses."

27. A fourth Bangor resident wrote: "I do NOT support the expansion of methadone clinics in Bangor. We are already attracting addicts who do not live here for treatment. My house was broken into by a drug addict. We go on lock down now every time we leave the house or go to sleep."

28. A fifth Bangor resident wrote: "As a single family homeowner in Bangor it saddens me to see that when I am relaxing on my own front porch, I see people stumbling down my street at early hours in the morning and coming up to my front steps begging for money or asking to use my bathroom. Is this what our city is coming to? What is the incentive for the hard working people in the community that want to live and work in a safe and prosperous community? Stand UP for us please and say NO [to Penobscot Metro's expansion]!"

29.     At a July 11 meeting of the City Council, Councilor David Nealley expressed concern about what he believed would happen if Penobscot Metro expanded:

> You see, actually Bangor has had a migration of folks in need of service . . . . We're like magnet and we attract folks in need. But when roughly 80-plus percent of the folks that are receiving treatment are State pay or reimbursement, it just seems to me that we continue to attract, continue to attract, continue to attract, and I say, "Gee, look at Bangor, and look at the problems and issues they're having." . . . . I'm not saying we created drug abuse and alcoholism, but the situation is we've created an inordinate amount of folks finding Bangor because treatment facilities are here that might have stayed in Hancock County, Waldo County, Aroostook County, and northern Penobscot.

Councilor Benjamin Sprague voiced similar fears:

> I think that people, our constituents in Bangor, wonder why all the clinics have to be in Bangor, why the expansions are in Bangor… There's questions about carrying capacity of the community. We don't want to reinforce negative stigmas, but let's be honest here, there are potential negative socioeconomic unintended consequences of being a hub for treatment that being a hub for, say, grocery stores wouldn't have … or chemotherapy, et cetera, et cetera.

30.     While citizens and city councilors expressed the view that the location or expansion of a methadone clinic in a city causes crime to increase or other negative consequences, no facts or empirical evidence to that effect were presented to the City Council.

31.     On the contrary, Penobscot Metro presented evidence to the City Council that because methadone treatment helps drug addicts to recover from their addiction and turn around their lives, the location or expansion of a methadone clinic in a city actually causes crime to decrease, and thus does not pose a significant risk to the health or safety of other members of the community.

32.     One study Penobscot Metro presented to the City Council concluded that "Methadone treatment centers, in contrast to convenience stores, are not associated geographically with crime."

33. If Penobscot Metro is permitted to expand it will be able to add a minimum of 8 to 16 new patients per month, and potentially up to 30 new patients per month, until it gets to 500 total patients receiving methadone treatment.

*The City's Decision*

34. In July 2016 Penobscot Metro wrote to the City Solicitor advising him that recovering drug addicts are covered by the ADA, and that Chapter 93 violates the ADA on its face by singling out methadone clinics that serve recovering drug addicts for special discriminatory treatment. Penobscot Metro also advised the City Solicitor that the City Council would violate the ADA if it applied Chapter 93 so as to prevent the clinic from expanding.

35. On August 8, 2016, the City Council voted 7 to 2 to deny permission for Penobscot Metro to expand.

36. Councilors who voted against expansion said they were doing so because they questioned the need for additional methadone treatment slots in Bangor.

37. The evidence in the record, however, was that additional slots were needed.

38. Recovering drug addicts who are unable to obtain methadone treatment are at grave risk of returning to illegal drug use and experiencing severe adverse health consequences such as illness, permanent disability, and death. Addiction is a life-threatening disease, and recovering addicts deserve compassion and access to treatment.

**COUNT I**
**Discrimination in Violation of the ADA and the Rehabilitation Act**

39. Penobscot Metro repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

40. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

41. Section 504 of the Rehabilitation Act of 1973 prohibits the same type of discrimination by a recipient of federal funds: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistances . . . ." 29 U.S.C. § 794(a).

42. As a public entity and a recipient of federal funds, the City is subject to both the ADA and the Rehabilitation Act, and is prohibited from discriminating against qualified individuals with disabilities in relation to its services, programs, or activities.

43. The administration of zoning law is a service, program, or activity within the meaning of ADA and the Rehabilitation Act.

44. The recovering drug addicts Penobscot Metro serves are qualified individuals with disabilities under the ADA and the Rehabilitation Act.

45. As a provider of methadone treatment to recovering drug addicts who are protected by the ADA, Penobscot Metro has standing to sue to vindicate their rights under that statute.

46. Chapter 93 discriminates against recovering drug addicts on its face, by expressly proscribing the establishment or expansion of "chemical dependency treatment facilities . . . that provide methadone maintenance treatment" in the City.

47. Because it singles out methadone clinics for special discriminatory treatment, the Ordinance is invalid on its face.

10872470.1

48. Chapter 93 is also invalid as applied to Penobscot Metro, because the City acted on discriminatory prejudice in denying Penobscot Metro permission to expand.

49. There is no evidence that the expansion of Penobscot Metro's methadone clinic would pose a significant risk to health or safety in the City.

50. Potential patients of Penobscot Metro who are unable to receive methadone treatment for their drug addiction because the facility is full are suffering irreparable harm, and will continue to suffer irreparable harm, until Penobscot Metro is able to expand and serve them.

51. As a consequence of the City's denial of permission for Penobscot Metro to expand, its prospective patients have been injured in their health and well-being, and Penobscot Metro has sustained pecuniary harm.

## REQUEST FOR RELIEF

Penobscot Metro requests that the Court:

1. Issue an injunction enjoining the City from enforcing Chapter 93 against it, or ordering that the City grant Penobscot Metro's application to expand without further delay.

2. Award damages to compensate Penobscot Metro for the City's unlawful enforcement and application of Chapter 93.

3. Order that the City reimburse Penobscot Metro for its expenses in this action, including its reasonable attorney's fees under 42 U.S.C. § 12205.

10872470.1

Dated:  August 23, 2016

Respectfully submitted,

*/s/ Sigmund D. Schutz*
Sigmund D. Schutz, Esq.

*/s/ John P. Doyle, Jr.*
John P. Doyle, Jr., Esq.

*/s/ Holly E. Lusk*
*Holly E. Lusk, Esq.*

Attorneys for Plaintiff Metro Treatment of Maine, LP d/b/a Penobscot County Metro Treatment Center

PRETI FLAHERTY BELIVEAU
& PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
(207) 791-3000
sschutz@preti.com
jdoyle@preti.com
hlusk@preti.com

10872470.1